### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ASHLEY WEBBE,

    Plaintiff,

v.

MOUNTAIN VIEW CARE AND
REHABILITATION, LLC

    Defendant.

Case No. _____

JURY TRIAL DEMANDED

## COMPLAINT

NOW COMES Plaintiff, Ashley Webbe, by and through her attorney, David M. Manes, Esq., of Manes & Narahari LLC, and files this Complaint alleging as follows:

### I. Nature of the Action

1.　　Plaintiff brings this Complaint to recover damages under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.,* and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951 *et seq.* Plaintiff alleges that she was subjected to persistent sexual harassment by an employee of Defendant. Plaintiff further alleges that she was constructively discharged as a result of Defendant's failure to resolve the harassment.

### II. Jurisdiction and Venue

2.　　This action arises under the Title VII.  This Court has jurisdiction over Plaintiff's discrimination claims pursuant to 28 U.S.C. § 1331.

3.　　This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

4.      Plaintiff is a resident and citizen of Pennsylvania, a substantial part of the events or omissions giving rise to the claims occurred in Central Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Middle District of Pennsylvania and the venue is proper.

5.      Plaintiff filed a timely charge with the Equal Employment Opportunity Employment Commission ("EEOC") regarding her allegations under Title VII on July 15, 2022, under charge number 533-2022-02223. This Charge was dual filed with the PHRC. *See Exhibit 1*.

6.      Plaintiff was issued a transfer letter from the EEOC to the PHRC, Pursuant to the work-sharing agreement, on December 29, 2022. *Exhibit 2*.

7.      The Charge of Discrimination has been pending with the PHRC for at least one year, making this Complaint timely.

### III. Parties

8.      Plaintiff, Ashley Webbe ("Plaintiff"), is an adult individual with a primary residence located at 482 Main Street, Gouldsboro, Pa 18424.

9.      Defendant, Mountain View Care and Rehabilitation, LLC ("Mountain View") is a Pennsylvania business corporation with a regular place of business located at 2309 Stafford Avenue, Scranton, Pa 18505.

### IV. Facts

10.     Plaintiff began working for Defendant on or about November 27, 2017.

11.     Plaintiff and other female employees have faced sexual harassment by Thomas Koldjeski, a floor technician and house keeper for Mountain View.

12.     Mountain View held a Christmas party in December of 2019.

13.    In the weeks leading up to this Christmas party, Koldjeski began expressing a romantic interest in Plaintiff.

14.    Koldjeski repeatedly asked Plaintiff out and to be his date for the party.

15.    Plaintiff repeatedly informed Koldjeski that she was married, wasn't interested, and declined all of his advances.

16.    From that point on Koldjeski repeatedly asked with employees of Mountain View if Plaintiff was still married, if she was divorced, and whether or not he should ask her out.

17.    During Plaintiff's employment with Mountain View, Koldjeski would stalk Plaintiff around the facility, place him arm around her, continuously ask others if she was available, make comments about her physical appearance, and stare at her breasts and buttocks.

18.    Koldjeski's behavior was common knowledge around Mountain View.

19.    In December of 2021, Plaintiff was in a vacant office using a computer.

20.    Upon leaving the office, Koldjeski walked in, the only reason being that Plaintiff was there.

21.    Koldjeski had no work related reason to make an appearance in this office.

22.    Koldjeski grabbed Plaintiff by the arm and pulled her back into the office, stating that he needed to talk to her.

23.    Koldjeski had no reason to physically touch Plaintiff nor to speak with her.

24.    Plaintiff was asked if he should wear a Santa suit to this year's Christmas party.

25.    Plaintiff told him that this behavior was inappropriate and then she left the office.

26.    Plaintiff verbally reported this incident to Benvidia Notz, the Assistant Director of Nursing, and Shawn Feliciano, Koldjeski's direct supervisor.

27.     In or around June 2022, Plaintiff entered the unlocked staff bathroom, believing it to be vacant.

28.     Koldjeski was in the bathroom, urinating into the urinal. He turned towards Plaintiff and exposed his penis to her.

29.     Plaintiff immediately left the bathroom and told several employees of Mountain View about what had happened.

30.     After Plaintiff spoke about this incident, other female employees came forward and admitted to similar encounters with Koldjeski.

31.     With the amount of bathroom incidents that has happened with female employees, it appears as though Koldjeski made it a common practice to keep the door unlocked in order to expose himself to female employees.

32.     His consistent bathroom exposure has happened too many times for it to just be a coincidence.

33.     Plaintiff has made many complaints to the administration of Mountain View regarding Koldjeski's behavior and harassment. A lot of these complaints had been verbal.

34.     As the frequency and severity of Koldjeski increased, Plaintiff began making written complaints to Mountain View.

35.     On June 20, 2022, Koldjeski tried to lure Plaintiff into an empty utility room twice, repeatedly put his arm around Plaintiff, and followed her around the facility.

36.     Plaintiff filed a written report to Human Resources regarding the incidents of that day.

37.     After this complaint, Koldjeski was instructed not to enter the "B Wing" of the facility, which is where Plaintiff was normally assigned to work.

38.    Plaintiff was instructed to contact Feliciano anytime Koldjeski entered the "B Wing" or harassed Plaintiff.

39.    Plaintiff has to contact Feliciano almost every shift she worked because Koldjeski had entered her area and continued to harass her.

40.    Feliciano would have to come to the "B Wing" and retrieve Koldjeski.

41.    Plaintiff often used her personal cell phone in order to contact Feliciano, but has used a desk phone of Mountain View on several occasions to contact him.

42.    There were also several times other coworkers had to contact Feliciano on Plaintiff's behalf to gave Koldjeski removed.

43.    Koldjeski would follow Plaintiff around the facility and pretend to be cleaning in order to be around her. He continued making comments about her physical appearance.

44.    During the week of July 4, 2022, Koldjeski entered the break room where Plaintiff was eating lunch with other employees and asked her if she ever "ran professional track".

45.    Another employee stated that Koldjeski was "checking Plaintiff out like she was candy".

46.    During the week of July 7, 2022, Plaintiff was assigned to work with Koldjeski because Mountain View was short staffed.

47.    Despite all of Plaintiff's complaints, numerous witnessed incidents, and restrictions put into place to supposedly keep Koldjeski away from Plaintiff, she was forced to work with him.

48.    Mountain View promised to keep Koldjeski away from Plaintiff.

49.    Despite the promise, Mountain View failed to keep Koldjeski away from Plaintiff and then forced her to work with him.

50. During this shift, Plaintiff was harassed the entire time. On July 8, 2022, Koldjeski followed Plaintiff, touched her without permission, and gawked at her.

51. On this day, Koldjeski was not to be in the same wing as Plaintiff. Plaintiff called Feliciano and complained.

52. Koldjeski repeatedly and intentionally ignored Mountain View's orders to stay away from Plaintiff.

53. After this incident, Koldjeski was allegedly suspended "indefinitely" pending an investigation.

54. Plaintiff believes this investigation never took place. Mountain View had been well informed about the harassment Plaintiff and other female staff faced. No witnesses were ever interviewed regarding Koldjeski's behavior.

55. A witness, Ashley Warshawsky, saw Koldjeski harassing Plaintiff. During this incident, Plaintiff was seen yelling at Koldjeski to get away from her. This incident was also caught on a security camera.

56. Warshawsky had also been harassed by Koldjeski.

57. Koldjeski intentionally locked Erin Fanning in the staff bathroom. This incident was reported to Mountain View, their response was that anyone could have accidentally locked the door by bumping into it.

58. This was not an accidental incident and the door wasn't bumped in to.

59. Plaintiff has made complaints regarding Koldjesi to Bill Krammerer (Facility Administration), Heather Rogers (Director of Nursing), Benvinida Nolz (Assistant Director of Nursing), Debbi Gibs (Scheduling), and Linda Yarros (Director of Human Resources).

60. On July 14, 2022, Plaintiff was at work by 3:00 a.m.

61.    Around 7:00 a.m., Plaintiff was taking her break outside in the parking lot.

62.    Feliciano approached Plaintiff and asked if Mountain View has called her because Koldjeski was returning to work. She had not been informed.

63.    Plaintiff spoke to Gibs about it as there were no other administration personnel at the facility.

64.    Plaintiff also contacted her husband and a union representative.

65.    Krammerer and the union representative came to the facility and tried to persuade Plaintiff to go inside to have a meeting with them.

66.    Plaintiff refused to enter a meeting without her husband present because Mountain View repeatedly failed to remedy the situation and felt that they were going to try to dismiss her valid complaints.

67.    While waiting for her husband, Plaintiff was visibly crying and shaking.

68.    Gibs told her not to have her husband involved.

69.    Once Plaintiff's husband arrived, Krammerer said he wasn't welcome in the meeting because he was not an employee.

70.    Plaintiff and her husband explained that Mountain View mishandled the entire situation by failing to stop the harassment and knowing it would continue if Koldjeski returned.

71.    Plaintiff's union representative was more concerned in protecting Mountain View then protecting Plaintiff.

72.    Plaintiff and her husband informed Mountain View that the only way this situation could be remedied was to terminated Koldjeski.

73.     Plaintiff refused to return to work until the situation was resolved. She did not want to endure further harassment that could have been avoided had Mountain View remedied the situation.

74.     Later that same day, Krammerer said that they were initiating an investigation against Koldjeski and that he would not be permitted at the facility until the investigation was complete.

75.     This was further evidence to Plaintiff that the investigation did not take place when Koldjeski was "suspended indefinitely pending an investigation".

76.     After Koldjeski wasn't allowed to return to work, Plaintiff began having issues with shift scheduling.

77.     It was common for Gibs to forget to place Plaintiff on the schedule for days she was supposed to work. Plaintiff was permitted to work her agreed upon shift due to the clerical error.

78.     On July 18, 2022, Plaintiff noticed that she was not on the schedule for July 19, 2022.

79.     Plaintiff went to Gib's office to remind her that Plaintiff needed to leave for a short time on the 19th during her shift.

80.     During this conversation, Notz entered Gib's office and ask Plaitniff to excuse them.

81.     After talking to Notz, Gib's instructed Plaintiff to take the entire day off because Mountain View had sufficient staff.

82.     On July 19, 2022, I learned that the shift was not fully staffed as she had been told.

83. On July 21, 2022, Plaintiff was pulled from her usual assignment in the "B Wing" to cover a different section.

84. This left the "B Wing" short staffed. Notz is the B Wing supervisor.

85. Notz was purposely assigned Plaintiff to a different section to punish her, as Notz knew Plaintiff preferred the "B Wing" and was intentionally causing this area to be short staffed by moving Plaintiff.

86. On July 22, 2022, Plaintiff was informed that Koldjeski would be returning to work on Monday, July 25, 2022.

87. Mountain View's solution to the harassment was to reinforce previous restrictions, despite these measures proving severely ineffective the last time.

88. Due to Koldjeski's return and Mountain View's failure to remedy the situation, Plaintiff had no choice but to resign from her position.

89. Plaintiff's last day was July 23, 2022.

## COUNT I
**Sexual Harassment and Retaliation in Violation of Title VII**

90. The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

91. Under Title VII of the Civil Rights Act ("Title VII"), it is unlawful for an employer to engage in discrimination against an employee on the basis of her sex with regard to the "compensation, terms, conditions, or privileges of [her] employment." 42 U.S.C. § 2000e-2(a)(1).

92. The United States Supreme Court has long held that "a plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986).

93.    In order to show the existence of a hostile work environment, a plaintiff must first demonstrate that "she suffered intentional discrimination because of her gender" and that "the discrimination was pervasive and regular." *Valenti v. Triangle Circuits of Pittsburgh, Inc.*, 419 F.Supp.2d 701, 706 (W.D. Pa. 2005).

94.    A plaintiff must also present evidence to show that "the discrimination detrimentally affected her," and, such treatment "would have detrimentally affected a reasonable person of the same protected class in her position." *Id.*

95.    Finally, a plaintiff must show that "there is a basis for respondeat superior liability." *Id.*

96.    Defendant is an employer within the meaning of Title VII.

97.    Plaintiff was an employee within the meaning of Title VII.

98.    Plaintiff was targeted by Koldjeski and suffered intentional discrimination and harassment based on her gender.

99.    Plaintiff experienced severe and regular sexual harassment during her employment with Defendant.

100.    As her employer, Defendants had a duty to provide Plaintiff with a harassment-free workplace.

101.    Defendant failed to do so.

102.    In order to state a *prima facie* case for unlawful retaliation in violation of Title VII, a plaintiff must first show that she "engaged in a protected activity" under the law. *McIntosh v. White Horse Village, Inc.,* 249 F. Supp. 3d 796, 800 (E.D. Pa. 2-17).

103.    Next, a plaintiff must present evidence that she "suffered an adverse employment action, and that there was a causal connection between the participation in the protected activity and the adverse action." *Id.*

104.    Plaintiff had the protected right to refuse the sexual advances perpetrated by an employee of Defendant, Thomas Koldjeski.

105.    After refuting and reporting the sexual advances of Koldjeski, Plaintiff was still forced to endure it.

106.    The adverse employment action occurred after Koldeski was suspended the second time, pending investigation.

107.    Plaintiff was not placed on the schedule and was moved to different locations.

108.    Plaintiff was informed that Koldjeski would be coming back to the facility.

109.    Mountain View had already failed to prevent the harassment and Plaintiff knew the harassment would continue.

110.    Plaintiff suffered damages as a result of the harassment and retaliation, including lost wages and emotional distress.

111.    The foregoing misconduct by Defendant was undertaken with malice and/or reckless indifference to Plaintiff's rights protected under federal law to be free from discrimination.

### COUNT II
**Sexual Harassment and Retaliation in Violation of the PHRA**

112.    The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

113.    The analytical framework used to evaluate a claim under the Pennsylvania Human Relations Act ("PHRA") is effectively indistinguishable from that under Title VII. See *Jones v. Sch. Dist. of Philadelphia,* 198 F.3d 403, 409 (3d Cir. 1999).

114.    Because Plaintiff is able to state a *prime facie* case for sexual harassment and retaliation under Title VII, so too will she be able to state such a claim under the PHRA.

115.    Defendant is an employer within the meaning of the PHRA.

116.    Plaintiff was an employee within the meaning of the PHRA.

117.    Plaintiff experienced severe and regular sexual harassment by another employee, Thomas Koldjeski, during her tenure.

118.    As her employer, Defendant had a duty to provide Plaintiff with a harassment free workplace.

119.    Plaintiff suffered damages as a result of the sexual harassment and retaliation, including lost wages and emotional distress.

120.    The foregoing misconduct by Defendant was undertaken with malice and/or reckless indifference to Plaintiff's rights protected under federal law to be free from discrimination.

**COUNT III**
**Sex Discrimination in Violation of Title VII**

121.    The averments contained in the preceding paragraphs are incorporated herein as though set forth in length.

122.    Title VII makes it illegal for an employer to "limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities ... because of such individual's…sex." 42 U.S.C. § 2000e–2(a)(2).

123. Defendant is an employer within the meaning of Title VII.

124. Plaintiff was an employee within the meaning of Title VII.

125. A plaintiff must first establish a prima facie case of discrimination by showing that "(1) she is a member of a protected class, (2) she was qualified for the position she sought to attain or retain, (3) she suffered an adverse employment action, and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." Jones v. Temple Univ., 622 F. App'x 131, 134 (3d Cir. 2015) (citing Mandel v. M & Q Packing Corp., 706 F.3d 157, 169 (3d Cir. 2013)).

126. Plaintiff's protected class is her sex/gender.

127. Plaintiff was fully qualified for the position she sought to retain.

128. Plaintiff was subjected to severe and continuing sexual harassment while working with Defendant.

129. Plaintiff was constructively discharged from her employment with Defendant because of her sex in violation of Title VII and suffered damages as a result.

130. The foregoing misconduct by Defendant was undertaken with malice and/or reckless indifference to Plaintiff's rights protected under federal law to be free from discrimination.

**COUNT IV**
**Sex Discrimination in Violation of the PHRA**

131. The averments contained in the preceding paragraphs are incorporated herein as though set forth in length.

132. Defendant is an employer within the meaning of the PHRA.

133. Plaintiff was an employee within the meaning of the PHRA.

134. Plaintiff is of the protected class of sex/gender.

135.    Plaintiff was fully qualified to perform all aspects of her job.

136.    Defendant engaged in discriminatory conduct in violation of the PHRA allowing Koldjeski to continue to touch Plaintiff, allowing her to be stalked by Koldjeski, allowing Koldjeski to expose his penis to her and several other female employees, allowing inappropriate comments to take place, and failing to remedy the situation.

137.    Plaintiff suffered an adverse employment action when she was constructively discharge to protect herself from Koldjeski.

138.    The foregoing misconduct by Defendant was undertaken with malice and/or reckless indifference to Plaintiff's rights protected under federal law to be free from discrimination.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Ashley Webbe respectfully requests that this Court enter judgment in her favor, and against Defendant, Mountain View Care and Rehabilitation, and award all damages available at law in equity, including: lost wages, front pay, compensatory damages, punitive damages, court costs, attorney fees, prejudgment and continuing interest, and any other relief that the Court deems necessary and proper.

Respectfully Submitted,

/s/ David M. Manes
David M. Manes, Esq.
PA ID: 314661
**Manes & Narahari LLC**
One Oxford Centre
301 Grant Street, Ste 270
Pittsburgh, PA 15219
(412) 626-5571 Direct

(412) 650-4845 Fax
dm@manesnarahari.com

## VERIFICATION

I, Ashley Webbe, swear under penalty of perjury under the laws of the United States of America that the facts alleged in the foregoing Complaint are true and correct to the best of my knowledge.

*Ashley M. Webbe*

_____

Ashley Webbe